Denisse O. Gastélum, SBN 282771
**GASTÉLUM LAW,**
**A PROFESSIONAL**
**CORPORATION**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com

Christian Contreras, Esq. (SBN 330269)
    *CC@Contreras-Law.com*
Edwin S. Salguero, Esq. (SBN 344820)
    *ES@Contreras-Law.com*
**LAW OFFICES OF CHRISTIAN**
**CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000; Fax: (323) 597-0101

Attorneys for Plaintiff,
ESTATE OF ANDREW BALDERRAMA, et al.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF ANDREW BALDERRAMA, et al.; A.B. JR., individually and as successor in interest to ANDREW BALDERRAMA, by and through his guardian ad litem, DAISY AVILA; A.M.B., individually and as successor in interest, by and through her guardian ad litem, SUSAN RODRIGUEZ; JOSANN BALDERRAMA, individually; and ALBERT BALDERRAMA, individually, <br><br> Plaintiffs, <br><br> v. <br><br> LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; COUNTY OF LOS ANGELES, a public entity; SHERIFF ROBERT G. LUNA, individually; VINCENT TELLEZ, an individual, and DOES 1 through 10, inclusive, <br><br> Defendants. | **CASE NO.: 2:24-cv-4867** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983); <br> 2. Failure to Provide Medical Care, Fourteenth Amendment Violation (42 U.S.C. § 1983); <br> 3. Deprivation of the Right to Familial Relationship with Decedent (42 USC § 1983) <br> 4. Municipal Liability - Unconstitutional Policies, Customs, Practices (*Monell*, 42 U.S.C. § 1983); <br> 5. Municipal Liability - Failure to Train (*Monell*, 42 U.S.C. § 1983); <br> 6. Supervisory Liability (42 U.S.C. § 1983); <br> 7. Negligence – Wrongful Death <br> 8. Negligence – Medical Malpractice; <br> 9. Violation of California Government Code §845.6; <br> 10. Violation of California Civil Code §52.1 (Tom Bane Act) <br><br> **DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      This civil rights action seeks to establish the true and unequivocal facts surrounding the brutal and violent attack of ANDREW BALDERRAMA on or about May 14, 2023, and to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.

2.      This civil rights action further seeks to establish the violations of fundamental rights under the United States Constitution, which resulted in the attack of ANDREW BALDERRAMA on or about May 14, 2023, an attack which resulted in ANDREW BALDERRAMA's subsequent cruel death on May 17, 2023.

3.      At the time of the attack, ANDREW BALDERRAMA was a thirty-seven- year-old, who suffered from mental health issues, leaving him vulnerable to violent inmates.  On May 17, 2023, ANDREW BALDERRAMA, a son and father of his two (2) children, was brutally and repeatedly beaten in his cell by his cell inmate, VINCENT TELLEZ. VINCENT TELLEZ  was known by the individual defendants to be aggressive and violent based on his violent history. VINCENT TELLEZ  was a known violent predator who preyed on the weak and the



most vulnerable. Because of these traits, his mental/medical condition, and his tendency toward violence, each defendant herein knew, or should have known, that VINCENT TELLEZ  posed an imminent threat of violence and harm to all other inmates in his immediate vicinity.

4.      Long before the attack of ANDREW BALDERRAMA, each of the individually named defendants from the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter "LASD") and COUNTY OF LOS ANGELES

(hereinafter "COUNTY") knew that there existed a great indifference to the safety and protection of inmates, particularly mentally ill and vulnerable inmates at Men's Central Jail. This indifference consisted of a total disregard by the custodial staff and mental health staff for mentally ill, vulnerable inmates who were susceptible to being preyed upon by violent predatory inmates.

5.    Despite this long history of inmate-on-inmate violence, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent predatory behavior among inmates.

6.    Therefore, by the time ANDREW BALDERRAMA was taken into custody and housed at Men's Central Jail, violent inmates knew that they could continue to prey on the most vulnerable with no interference on the part of the custodial staff or the mental health staff.

7.    Accordingly, this civil rights action seeks to vindicate ANDREW BALDERRAMA's violent death and egregious violation of his constitutional rights, as well as bring justice for the deprivation of Plaintiffs' beloved son and father, ANDREW BALDERRAMA.

## JURISDICTION AND VENUE

8.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

9.    This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

10.    Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

///

**COMPLAINT FOR DAMAGES**

11.     Plaintiffs presented their government claims on November 13, 2023. Defendant COUNTY rejected Plaintiffs' claim on January 2, 2024. Plaintiffs bring this action within six months of the tort claim rejection. Accordingly, Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

12.     With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

## PARTIES

13.     Plaintiffs A.B., J.R., and A.M.B., were the natural children of ANDREW BALDERRAMA (hereafter "BALDERRAMA" or "DECEDENT"), and at all times relevant hereto were residents of Los Angeles County, California. Plaintiffs A.B., J.R., and A.M.B. bring these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.*, which provide for survival and wrongful death actions. Plaintiffs A.B., J.R., and A.M.B. also bring these claims individually and on behalf of decedent ANDREW BALDERRAMA on the basis of 42 U.S.C. § 1983 and § 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiffs A.B., J.R., and A.M.B. also bring these claims as a Private Attorney General, to vindicate not only their rights, but others' civil rights of great importance.

14.     Plaintiff ALBERT BALDERRAMA, and at all times relevant hereto was a resident of Los Angeles County, California. Plaintiff ALBERT BALDERRAMA is DECEDENT's father and brings his claims in his individual capacity.

15.     Plaintiff JOSANN BALDERRAMA, and at all times relevant hereto was a resident of Los Angeles County, California. Plaintiff JOSANN BALDERRAMA is Decedent's mother and brings her claims in her individual capacity.

16.     Defendant LOS ANGELES COUNTY (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter also "LASD"), also a separate public entity,

which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including LASD employees complied with the laws and the Constitutions of the United States and of the State of California.  Defendant COUNTY, through LASD, is and was responsible for ensuring the protection and safety of all persons incarcerated at the LASD correctional facilities and detention centers, including the MCJ.

17.    Defendant ROBERT G. LUNA (hereinafter also "LUNA"), at all times mentioned herein, was the Sheriff of Defendant LOS ANGELES COUNTY, the highest position in the COUNTY Jails. As Sheriff, Defendant LUNA is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all COUNTY Jails' employees and/or agents. Defendant LUNA is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of the inmates housed therein. Defendant LUNA also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein were committed. Defendant LUNA is being sued in his individual capacities.

18.    Defendant VINCENT TELLEZ  at all relevant times was an inmate of Men's Central Jail and the individual who physically killed ANDREW BALDERRAMA.

19.    At all relevant times, Defendants DOES 1-10, inclusive, were individuals employed as employees/deputies with the defendant LASD, acting within the course and scope of that employment, under color of law.

20.    Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 through 10 and therefore sue these Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiff as set forth herein.

1 Plaintiff will amend their complaint to state the names and capacities of each DOE

2 Defendant when they have been ascertained.

3     21.   The identities, capacities, and/or nature of involvement of the defendants

4 sued as DOES 1 through 10 are presently unknown to the Plaintiff who therefore sue

5 these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon

6 allege that DOES 1 through 10 include individual law enforcement personnel employed

7 by the LASD and the COUNTY, and that they were involved in some manner and are

8 legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will

9 amend this complaint to substitute the DOE Defendants' true names and capacities

10 when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege

11 that each DOE defendant is a resident of California. Upon information and belief,

12 DOES 1 through 10 were and still are residents of LOS ANGELES COUNTY,

13 California. DOES 1 through 10 are sued in their individual capacity.

14     22.   At all relevant times, DOES 7 and 8 were managerial, supervisorial,

15 training, and/or policymaking employees of Defendant COUNTY. At the time of the

16 incident, DOES 7 and 8 were acting under color of law within the course and scope of

17 their duties as employees for the COUNTY They had supervisorial authority over

18 DOES 1-10, and the COUNTY Correctional Health Services employees at the

19 COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification

20 of their principal, Defendant COUNTY.

21     23.   At all relevant times, DOES 9 and 10 were managerial, supervisorial,

22 training, and/or policymaking employees of Defendant COUNTY. At the time of the

23 incident, DOES 9 and 10 were acting under color of law within the course and scope

24 of their duties as employees for the LASD and/or the COUNTY. They had supervisorial

25 authority over DOES 1-10, and the employees of the LASD. DOES 9 and 10 were

26 acting with the complete authority and ratification of their principal, Defendant

27 COUNTY.

28 ///

24.     Each of the defendants, including the DOE Deputy Defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

25.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and ANDREW BALDERRAMA's constitutional rights and other harm.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

26.     On or about February 23, 2023, ANDREW BALDERRAMA was taken into the custody of the LOS ANGELES COUNTY SHERRIFF'S DEPARTMENT for a non-violent misdemeanor offense and was housed in Men's Central Jail (hereinafter "MCJ"), located at 441 Bauchet St., Los Angeles, CA 90012.

27.     On or about May 14, 2023, ANDREW BALDERRAMA was brutally chocked and beaten by his cell mate, VINCENT TELLEZ  while housed at MCJ. This

attack caused ANDREW BALDERRAMA to suffer multiple severe injuries, including cardiac arrest, traumatic cerebral edema, neck fractures, traumatic brain compression with herniation, and anoxic brain damage, among other injuries.

28. Following the attack, ANDREW BALDERRAMA was hospitalized for several days at the Los Angeles County Hospital but ultimately succumbed to his injuries and died on May 17, 2023.

29. Upon information and belief, LASD deputies and/or custody staff were well aware of ANDREW BALDERRAMA's mental health conditions which could have led to a violent situation with another inmate. Despite this knowledge, LASD personnel failed to take adequate precautions to protect ANDREW BALDERRAMA.

30. Furthermore, upon information and belief, LASD deputies and/or custody staff were aware of the propensity for the danger posed by ANDREW BALDERRAMA's cellmate, VINCENT TELLEZ, and failed to properly classify VINCENT TELLEZ.

31. Upon information and belief, LASD deputies and mental health staff were aware of VINCENT TELLEZ 's violent history, tendencies, and propensities for violence based on their interviews and evaluations of VINCENT TELLEZ and review of his medical and penal records. LASD deputies and mental health staff knew or should have known that VINCENT TELLEZ would attack or otherwise and/or kill other inmates if VINCENT TELLEZ was not consistently monitored.

32. Nevertheless, LASD deputies and/or custody staff intentionally and improperly housed ANDREW BALDERRAMA with this dangerous individual, thereby placing him at substantial risk of death or serious harm.

33. By housing ANDREW BALDERRAMA with a dangerous individual, despite ANDREW BALDERRAMA being in custody for a non-violent misdemeanor offense, LASD personnel showed a deliberate indifference to his safety. This indifference ultimately led to ANDREW BALDERRAMA being brutally killed by his cell mate, VINCENT TELLEZ.

34. Moreover, it was foreseeably dangerous to house ANDREW BALDERRAMA with VINCENT TELLEZ, an inmate with a violent history, because there was a high probability, based on ANDREW BALDERRAMA's mental health history, that an in-cell fight could break out, which carried a high probability of resulting in the murder of ANDREW BALDERRAMA given VINCENT TELLEZ 's violent history.

35. Long before the attack on ANDREW BALDERRAMA, LASD personnel were aware that at the MCJ, there existed a great indifference to the safety and protection of inmates, particularly vulnerable inmates such as ANDREW BALDERRAMA. This indifference was characterized by a total disregard for the well-being of inmates who were susceptible to being preyed upon by violent, predatory inmates.

36. Despite a long history of inmate-on-inmate violence, LASD personnel deliberately failed to take even modest actions to prevent predatory behavior among inmates. As a result, by the time ANDREW BALDERRAMA was taken into custody and housed at MCJ, violent inmates knew they could continue to prey on the most vulnerable without interference from custodial staff or medical/mental health staff.

37. Defendants placed ANDREW BALDERRAMA in a position of vulnerability and danger from his cellmate, VINCENT TELLEZ, because Defendants were on notice of VINCENT TELLEZ 's propensity for violence that foreseeably manifested when VINCENT TELLEZ violently attacked ANDREW BALDERRAMA and repeatedly beat and choked ANDREW BALDERRAMA. Defendants failed to take any reasonable steps to mitigate the obvious and well-known risk of harm, including this inmate-on-inmate violence, to ANDREW BALDERRAMA, that was attendant to housing ANDREW BALDERRAMA with an inmate like VINCENT TELLEZ.

38. Furthermore, upon information and belief, due to the COUNTY Jails patterns and practices of not conducting proper and timely Title 15 welfare and safety checks, ANDREW BALDERRAMA's dire need for emergency intervention went

unnoticed by the MCJ staff and deputies, who were responsible for monitoring and ensuring the welfare of all inmates, including ANDREW BALDERRAMA.

39. Defendants also knew that deputies routinely failed to conduct required Title 15 welfare and safety checks in MCJ and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

40. Upon information and belief, Defendants DOES 1 through 10, including the custodial and mental health staff of LASD's correctional facility MCJ, failure to conduct the required safety check of Decedent ANDREW BALDERRAMA's housing unit on the date of the violent attack evidences deliberate indifference to the risk of harm to ANDREW BALDERRAMA.

41. By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide ANDREW BALDERRAMA with safety and proper housing, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide proper Title 15 welfare and safety checks, along with emergency medical care and life-saving care to persons in their custody, constituted deliberate indifference to ANDREW BALDERRAMA's serious medical needs, health, and safety.

42. DOES 1 through 10, which included custodial and mental health staff of MCJ, acted with deliberate indifference, and reckless disregard to the safety, security, protection and constitutional and statutory rights of Decedent and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies or practices of, among other things,

    a. Selecting, retaining and assigning deputies to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates who exhibit vulnerabilities due to medical, mental health, and disabilities;

///

b.    Subjecting persons in their jails to violence perpetrated by other detainees, arrestees or inmates;

c.    Failing to take adequate security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the following: separation of detainees and arrestees from potentially violent or dangerous inmates; use of security cameras to monitor violence within jail cells; training deputies to monitor detainees and inmates and immediately respond to acts of violence or threats of violence; monitoring drunken detainees who are unable to care for themselves.

d.    Failing to adequately train, supervise, and control deputies in the arts of law enforcement;

e.    Failing to adequately discipline deputies involved in misconduct; and

f.    Condoning and encouraging deputies in the belief that they can violate the rights of persons such as the Plaintiffs in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

43.    Defendant DOES 1 through 10, which included custodial and mental health staff of MCJ acted with deliberate indifference and reckless disregard toward ANDREW BALDERRAMA's right to be protected and safe while housed at the MCJ, and afforded due process of law, by among other things, the following acts:

a.    Placing ANDREW BALDERRAMA, a vulnerable detainee with mental health concerns, in a cell with an inmate and/or arrestees whom Defendants knew or should have known had propensities for aggressive acts or acts of violence and mental instabilities, and not watching and protecting him;

b.    Failing to properly classify and house VINCENT TELLEZ as a violent inmate or otherwise house and classify VINCENT TELLEZ in appropriate housing where he could be constantly monitored and/or

1    isolated from other inmates;

2        c.    Placing ANDREW BALDERRAMA, a vulnerable detainee with mental

3                health concerns, in a cell with other detainees, arrestees and inmates under

4                circumstances that were conducive to the eruption of violence, including

5                in a unit with violent and dangerous inmates like VINCENT TELLEZ ;

6        d.    Causing ANDREW BALDERRAMA, to remain in the cell with another

7                inmate after Defendants knew that physical violence was imminent; and

8        e.    Not observing or protecting ANDREW BALDERRAMA, or otherwise

9                standing by and allowing a brutal beating on ANDREW BALDERRAMA

10               by another inmate to continue for an unreasonable period of time, resulting

11               in unnecessary and severe injury to ANDREW BALDERRAMA that

12               eventually caused his death on May 17, 2023.

13       44.    Plaintiffs are informed and believe that Defendants DOES 1 through 10

14   were aware of the threat VINCENT TELLEZ represented to ANDREW

15   BALDERRAMA, based on the inmate's criminal history or exhibited violent

16   tendencies of which the deputies and other employees knew or should have known.

17   Said defendants intentionally, recklessly and with deliberate indifference, failed to take

18   any security measures to protect detainees and arrestees of minor offenses who were

19   unable to defend themselves, such as ANDREW BALDERRAMA, who was unable to

20   care for himself or others from inmates with violent tendencies like VINCENT

21   TELLEZ.

22       45.    Plaintiffs are informed and believe and thereupon allege, that defendants

23   COUNTY and LASD ordered, authorized, acquiesced in, tolerated, or permitted other

24   defendants herein to engage in the unlawful and unconstitutional actions, policies,

25   practices, and customs set forth in the preceding paragraphs. Defendants' conduct as

26   alleged herein constitutes a pattern of constitutional violations based either on a

27   deliberate plan by defendants or on defendants' deliberate indifference, or reckless

28   disregard to the safety, security, and constitutional and statutory rights of Plaintiffs.

46.     Plaintiffs are informed and believe and thereupon allege that the brutal beating on ANDREW BALDERRAMA was conducted with the approval of LASD deputies or because of the deliberate indifference or reckless disregard of Deputy Defendants, and DOES 1 through 10 to the safety and security of ANDREW BALDERRAMA.

47.     Plaintiffs are informed and believe and thereupon allege that the Deputy Defendants and DOES 1 through 10 recklessly and with deliberate indifference, failed to immediately and appropriately respond to the brutal attack and allowed the attack to continue for an extended period of time, causing ANDREW BALDERRAMA to suffer numerous and severe injuries, resulting in his death.

48.     Plaintiffs are informed and believe that LASD deputies, intentionally, recklessly and with deliberate indifference, failed to take immediate action to summon medical care for ANDREW BALDERRAMA, despite knowing he was in need of immediate medical care.

49.     Defendants have been on notice for years that their provision of medical and mental health treatment to inmates is inadequate and results in needless harm and death.

50.     Welfare and safety checks by custody and mental health staff, when done correctly, are an important part of protecting inmates in the LASD jails from harm, including inmate on inmate violence. Defendants knew that health and welfare checks conducted in units were part of violence prevention programs and that such checks were necessary for inmate-on-inmate attack prevention.

51.     Prior to the attack of ANDREW BALDERRAMA, Defendants were aware that there was a problem with custody staff failing to actually perform required welfare and safety checks in the units at LASD jails, failing to perform adequate welfare and safety checks and/or failing to take adequate measures after observing violent during the welfare and safety checks.

52.     Defendants actions and omissions, as herein above recited, directly placed

13

**COMPLAINT FOR DAMAGES**

1  ANDREW BALDERRAMA at substantial risk of the grievous and tragic harm that

2  ultimately occurred.

3      53.    The County of Los Angeles, Sheriff Robert Luna, and the Los Angeles

4  County Sheriff's Department custodial and medical personnel assigned to its

5  correctional facilities have a responsibility to ensure that the Los Angeles County

6  correctional facilities are safe and that the constitutional rights of detainees such as

7  ANDREW BALDERRAMA are not violated. The County of Los Angeles, the Los

8  Angeles County Sheriff's Department and Sheriff Robert Luna have failed to ensure

9  detainees do not get assaulted in their jails and have failed to protect the civil rights and

10  constitutional rights of detainees within the County/LASD Jails. Accordingly, this

11  claim and the subsequent lawsuit will seek judicial intervention to ensure further

12  constitutional violations and jail assaults do not occur.

### FIRST CLAIM FOR RELIEF

**Failure to Protect from Harm**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(By Plaintiff ESTATE OF ANDREW BALDERRAMA As Against Defendants**

**DOES 1 through 10)**

18  54.    Plaintiffs reallege and incorporates herein by reference each of the

19  preceding paragraphs of this complaint, and any subsequent paragraphs.

20  55.    Pretrial detainees such as ANDREW BALDERRAMA have a Fourteenth

21  Amendment due process right to be free from harm. *See Castro v. County of Los*

22  *Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of*

23  *Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

24  56.    Upon information and belief, on or around February 23, 2023, when

25  Defendants DOES 1 through 10, and each of them were processing and classifying

26  ANDREW BALDERRAMA, Defendants DOES 1 through 10 made the intentional

27  decision to place ANDREW BALDERRAMA in a condition of confinement which

28  significantly exposed him to the risk of harm which ultimately caused ANDREW

BALDERRAMA's death.

57.     Given ANDREW BALDERRAMA's documented mental health problems, inmates such as ANDREW BALDERRAMA are more susceptible to violence. Individuals with mental health problems are more susceptible to violence from other inmates based upon manifestations from their mental health problems. The risk to harm to inmates such as ANDREW BALDERRAMA are even greater when they are in confinement with other inmates who have a propensity for violence.

58.     Indeed, upon information and belief, on or about May 14, 2023, Defendants DOES 1 through 10, and each of them continued to make the intentional decision to place ANDREW BALDERRAMA in a cell with VINCENT TELLEZ, who had a known history of attacking other inmates and had a history of violent propensities. Indeed, Defendants DOES 1 through 10, and each of them, made the intentional decision to recklessly mix dangerous inmates with pretrial detainees such as ANDREW BALDERRAMA.

59.     Upon information and belief, foreseeably, ANDREW BALDERRAMA was attacked by VINCENT TELLEZ in his cell on or about May 14, 2023. This attack caused ANDREW BALDERRAMA to go into cardiac arrest, suffer a traumatic cerebral edema, suffer neck fractures, suffer traumatic brain compression with herniation, and suffer anoxic brain damage, among other injuries.

60.     Upon information and belief, Defendants DOES 1 through 10 knew that VINCENT TELLEZ has a propensity for violence and posed a danger to other inmates because, upon information and belief, VINCENT TELLEZ had a documented history of attacking other inmates, of which Defendants DOES 1 through 10 were aware of by reviewing incident reports related to VINCENT TELLEZ 's history of violence towards other inmates and detainees.

61.     Nonetheless, despite having express and actual knowledge about the deadly risks which ANDREW BALDERRAMA faced given that he was being housed with a violent inmate, Defendants DOES 1 through 10, acted with deliberate

1  indifference when they callously made the intentional decision of placing ANDREW
2  BALDERRAMA in the same cell with VINCENT TELLEZ.

3      62.    Defendants DOES 1 through 10, acted with deliberated indifference
4  because they made the conscious choice of housing ANDREW BALDERRAMA with
5  a violent person and consciously disregarded the foreseeable consequence from such
6  action, which was death or serious bodily injury to ANDREW BALDERRAMA.

7      63.    Clearly, given that, upon information and belief, VINCENT TELLEZ had
8  a known history of violence towards other inmates and detainees, placing ANDREW
9  BALDERRAMA in this cell with the hazards of VINCENT TELLEZ 's violent acts
10 put ANDREW BALDERRAMA at substantial risk of suffering serious harm to which
11 Defendants DOES 1 through 10, and each of them, did not take reasonable measures
12 to reduce such risk even though any reasonable person would have appreciated the high
13 risks involved in the situation, knowing of VINCENT TELLEZ  documented history
14 of attacking other inmates and detainees.

15     64.    In fact, Defendants DOES 1 through 10, and each of them, could have
16 very easily placed ANDREW BALDERRAMA in a different cell, module, or facility
17 to reduce or abate the risks ANDREW BALDERRAMA faced by being housed with a
18 violent inmate like VINCENT TELLEZ.

19     65.    By failing to take such reasonable measures, it was obvious and
20 foreseeable that ANDREW BALDERRAMA would get assaulted by VINCENT
21 TELLEZ.

22     66.    Furthermore, Defendants DOES 1 through 10, and each of them also
23 placed ANDREW BALDERRAMA in a condition wherein ANDREW
24 BALDERRAMA could face a tortious death at the hands of violent inmates.
25 Defendants DOES 1 through 10, and each of them were aware that ANDREW
26 BALDERRAMA was being housed with a violent inmate with a history of attacking
27 other inmates. Therefore, ANDREW BALDERRAMA was in a vulnerable state and
28 was placed in a condition where he could be harmed by VINCENT TELLEZ, including

**COMPLAINT FOR DAMAGES**

being choked and beaten, which resulted in death.

67.    Clearly, such conditions put ANDREW BALDERRAMA at substantial risk of suffering serious harm. Despite having clear knowledge regarding the substantial risks that ANDREW BALDERRAMA faced by being housed with VINCENT TELLEZ, Defendants DOES 1 through 10, and each of them did not take any reasonable available measures to abate or reduce the risks ANDREW BALDERRAMA faced even though a reasonable person in the circumstances would have appreciated the high degree of risk involved.

68.    Therefore, Defendants DOES 1 through 10's conduct caused the obvious consequence that ANDREW BALDERRAMA would face death or serious bodily injury. Accordingly, by not taking such measures, Defendants DOES 1 through 10 caused ANDREW BALDERRAMA's death.

69.    Defendants subjected ANDREW BALDERRAMA to their wrongful conduct, depriving ANDREW BALDERRAMA of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of ANDREW BALDERRAMA and others would be violated by their acts and/or omissions.

70.    As a direct and proximate result of Defendants DOES 1-10' acts and/or omissions as set forth above, ANDREW BALDERRAMA, sustained injuries and damages.

71.    The conduct of Defendants DOES 1-10 entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants LASD and COUNTY

72.    Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

///

///

///

**SECOND CLAIM FOR RELIEF**

**Failure to Provide Medical Care**

**(Violation of the Fourteenth Amendment to the United States Constitution By Plaintiffs ESTATE OF ANDREW BALDERRAMA As Against Defendant DOES 1 through 10)**

73.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

74.     Pretrial detainees such as ANDREW BALDERRAMA have a Fourteenth Amendment due process right to needed medical care. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

75.     By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, violated ANDREW BALDERRAMA's Fourteenth Amendment rights, by depriving Decedent ANDREW BALDERRAMA, of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution: ANDREW BALDERRAMA's right to be free from deliberate indifference to ANDREW BALDERRAMA's serious medical and mental health needs while in custody as a pretrial detainee as secured by the Fourteenth Amendment.

76.     By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide ANDREW BALDERRAMA with appropriate medical based upon ANDREW BALDERRAMA's need for mental health treatment. ANDREW BALDERRAMA desperately needed medical treatment because the symptoms from his mental health problems were severely manifesting such that it put him at risk. ANDREW BALDERRAMA continued to deteriorate the longer he was in LASD custody. Yet, despite ANDREW BALDERRAMA's mental health condition deteriorating and being at a severely weakened stated, Defendants DOES 1 through 10.

77.   Worst yet, Defendants DOES 1 through 10 did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable person under the circumstances would have understood the high degree of risk involved—making the consequences of the Defendants DOES 1 through 10's conduct obvious.

78.   Clearly, given that ANDREW BALDERRAMA  life was in danger and at risk, Defendants DOES 1 through 10, and each of them, did not take reasonable measures to reduce such risk even though any reasonable person would have appreciated the high risks involved in the situation. By failing to take such reasonable measures, it was obvious and foreseeable that ANDREW BALDERRAMA could die from his injuries if not provided medical care for his mental health condition. Therefore, by not taking such measures, Defendants DOES 1 through 10, and each of them, caused ANDREW BALDERRAMA 's death.

79.   As a direct and proximate result of Defendants' conduct, the civil rights of ANDREW BALDERRAMA, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, Decedent ANDREW BALDERRAMA experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

80.   Defendants subjected ANDREW BALDERRAMA to their wrongful conduct, depriving ANDREW BALDERRAMA of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of ANDREW BALDERRAMA and others would be violated by their acts and/or omissions.

81.   As a direct and proximate result of Defendants DOES 1-10's acts and/or omissions as set forth above, ANDREW BALDERRAMA, sustained injuries and damages.

82.   The conduct of Defendants DOES 1-10 entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law.

1  Plaintiffs do not seek punitive damages against Defendants COUNTY and LASD.

2       83.    Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42

3  U.S.C. § 1988, and other applicable United States and California codes and laws.

4  **THIRD CLAIM FOR RELIEF**

5  **Deprivation of the Right to Familial Relationship with Decedent**

6  **(42 U.S.C. § 1983)**

7  **(By Plaintiffs A.B. JR., A.M.B., JOSANN BALDERRAMA, and  ALBERT**

8  **BALDERRAMA, against Defendants DOES 1 through 10)**

9       84.    Plaintiffs reallege and incorporate by reference each of the foregoing

10  paragraphs of this Complaint with the same force and effect as if fully set forth herein.

11       85.    The aforementioned acts and/or omissions of Defendants DOES 1 through

12  10 in being deliberately indifferent to Decedent ANDREW BALDERRAMA's

13  protection, safety, and serious medical and mental health needs, violating Decedent

14  ANDREW BALDERRAMA's constitutional rights, and their failure to train,

15  supervise, and/or take other appropriate measures to prevent the acts and/or omissions

16  that caused the untimely and wrongful death of ANDREW BALDERRAMA and

17  deprived Plaintiffs A.B. JR., A.M.B., JOSANN BALDERRAMA, and ALBERT

18  BALDERAMA of their liberty interests in the familial relationship in violation of their

19  substantive due process rights as defined by the Fourteenth Amendments of the

20  Constitution.

21       86.    All of the acts of Defendants DOES 1 through 10, and the persons

22  involved were done under color of state law.

23       87.    The acts and omissions of each Defendants deprived Plaintiffs A.B. JR.,

24  A.M.B., JOSANN BALDERRAMA, and ALBERT BALDERAMA, of rights,

25  privileges, and immunities secured by the Constitution and laws of the United States,

26  including but not limited to the Fourteenth Amendment by, among other things,

27  depriving Plaintiffs of their rights to a familial relationship with Decedent ANDREW

28  BALDERRAMA without due process of law by their deliberate indifference in denying

ANDREW BALDERRAMA protection and safety while incarcerated at the MCJ with an inmate known for their propensity for violence towards other inmates and detainees.

88.   Defendants DOES 1 through 10 and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding practices or customs of COUNTY and LASD. These include policies and longstanding practices or customs of failing to provide persons in pretrial custody who are experiencing medical emergencies access to medical care as stated above and incorporated herein.

89.   In addition, the training policies of the COUNTY and LASD were not adequate to train its deputies, agents and employees to handle the usual and recurring situations with which they must deal with, including but not limited to encounters with individuals in custody who are experiencing medical emergencies. These Defendants and each of them knew that its failure to adequately train its COUNTY custody, medical and mental health staff, including other agents and employees, to interact with individuals suffering from medical emergencies made it highly predictable that its custody, medical and mental health staff would engage in conduct that would deprive persons such as Decedent ANDREW BALDERRAMA, and thus Plaintiffs of their rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately.

90.   Defendants COUNTY and LASD's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiffs A.B. JR., A.M.B., JOSANN BALDERRAMA, and ALBERT BALDERAMA, and Decedent ANDREW BALDERRAMA by each individual Defendant's official policies and/or longstanding practices or customs are so closely related ANDREW BALDERRAMA's injuries and death and thus the deprivation of the rights of Plaintiffs as to be the moving force causing those injuries.

///

91.     Defendant SHERIFF ROBERT LUNA, a final policymaker for the COUNTY and LASD, ratified the actions and omissions of Defendants DOES 1 through 10, all of whom were custody, medical and mental health staff at the COUNTY Jails, including MCJ, in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

92.     As a direct and proximate result of Defendants' conduct, the civil rights of ANDREW BALDERRAMA, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, Decedent ANDREW BALDERRAMA experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

93.     Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

94.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

95.     The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants COUNTY.

96.     Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## FOURTH CLAIM FOR RELIEF

**Municipal Liability - Unconstitutional Policies, Customs, and Practices**

**(*Monell* - 42 U.S.C. § 1983)**

**(By Plaintiffs ESTATE OF ANDREW BALDERRAMA As Against Defendants COUNTY OF LOS ANGELES and LOS ANGELES COUNTY SHERIFF'S DEPARTMENT)**

97.     Plaintiffs reallege and incorporate herein by reference each of the

preceding paragraphs of this complaint, and any subsequent paragraphs.

98.     At all times relevant hereto, the COUNTY and LASD custody, medical and mental health staff were required to adhere to and enforce the following policies and procedures:

a.     To deny pretrial detainees and other inmates safety and protection by mixing non-violent pretrial detainees with violent inmates.

b.     To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

c.     To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of Los Angeles County's written policies and state law;

d.     To allow and encourage inadequate and incompetent medical care for jail inmates and arrestees;

e.     To hire, retain and contract for obviously inadequate medical care for jail inmates and arrestees, including creating financial incentives for custodial and medical personnel not to send inmates with emergency medical needs to a hospital;

f.     To allow, encourage, and require medical staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision;

g.     To fail to train custody staff that medical staff, including licensed vocational nurses, are not competent to assess or decide inmates' medical conditions, medical needs, or whether the inmate should be permitted to remain in the jail versus being sent to a hospital;

///

h.  To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization;

i.  To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

j.  To cover up violations of constitutional rights by any or all of the following:

   i.  By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

   ii.  By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial and medical personnel;

   iii.  By turning a blind eye to custodial and medical personnel who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into Los Angeles County jails; and

   iv.  By allowing, tolerating, and/or encouraging custodial and medical personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

k.  To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, LASD personnel, custodial personnel and medical personnel at the jail whereby an officer or member of the LASD or medical staff does not provide adverse information against a fellow officer, or member of the LASD or the medical staff;

**COMPLAINT FOR DAMAGES**

l.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of pretrial detainees, such as ANDREW BALDERRAMA, and in the face of an obvious need for such policies, procedures, and training programs.

99.    The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other officers employed by or acting on behalf of the COUNTY and LASD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY and the LASD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY and LASD, including SHERIFF LUNA:

a.    To fail to properly and adequately hire, train, supervise, and monitor custodial and medical personnel at the jails;

b.    To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical crisis;

c.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

d.    To cover up violations of constitutional rights by any or all of the following:

    i.    By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical crisis;

    ii.    By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

///

iii.    By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.    To allow, tolerate, and/or encourage a "code of silence" among custodial and medical personnel at the COUNTY jails whereby custodial and medical personnel does not provide adverse information against a fellow staffer;

g.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as ANDREW BALDERRAMA, and in the face of an obvious need for such policies, procedures, and training programs.

100.    Defendant supervisors had knowledge of in adequacy of Supervision and deliberate indifference towards inmates' rights to be protected from harm at the Los Angeles County Jails and failed to take corrective action.

101.    Prior to ANDREW BALDERRAMA death, high-level COUNTY supervisors, including and SHERIFF LUNA, knew or should have known of a history of years of notice of ongoing failure to routinely check in on inmates, knew or should have known of inadequate and/or incompetent staffing, insufficient and inadequate

training/supervision/control, the hiring of deputies in jails who exhibit deliberate indifference & reckless disregard to the safety of other inmates, subjection of violence in jails perpetrated by other inmates, and failure to take corrective measures, including separation of detainees from potentially violent or dangerous inmates, use of security cameras to monitor violence within jail cells, training deputies to monitor detainees and inmates and immediately respond to it, and failing to adequately control and discipline deputies involved in misconduct. The number of lawsuits against the COUNTY and throughout the state and the evidence available from those actions is troubling and demonstrative of Defendants' years of deliberate indifference to protective detainees from and inmates from unnecessary harm and their failure to take corrective action.

102.   As a preamble, between 2018 and 2023, the COUNTY had notice of a slew of cases revealing constitutional violations of inmates' rights to be protected from harm. Due diligence would have revealed these breaches of constitutional mandates:

103.   In 2023, Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails resulted in forty-five (45) in-custody deaths.

104.   ANDREW BALDERRAMA's death is one (1) of four (4) confirmed inmate-on-inmate deaths within the COUNTY Jails during the 2023 calendar year and was the sixteenth (16) death that year.

105.   The Defendants' deliberate indifference towards pretrial detainees subject to inmate violence due to the above-referenced polices, customs and practices resulted in several inmate-on-inmate deaths since 2018. From June 2018 through June 2023, twelve (12) inmates have died by due to inmate on inmate violence within the COUNTY jails:

> g.   In 2018, Adrian Neil Vilches, a 29-year-old male, was found unresponsive in his cell and was suffering from an apparent brain injury, due to lack of oxygen, and seizures. Mr. Vilches was a well nourished male with no fatal traumatic injuries. Although the circumstances surrounding Mr. Vilches'

death suggest a possible overdose that led to decreased breathing, cardiac arrest, and a deadly brain injury, it was unable to be definitively determined whether an overdose was the cause of death. Further, drug screens were performed on Mr. Vilches' in the hospital and came back negative.

h. In 2018, Markese Treavon Braxton, a 26-year old male, was found unresponsive and alone on the ground of his cell with vomit coming from his mouth. The diagnosis for Mr. Braxton was pulmonary edema, excessive fluids in the lungs, but both the actual manner and cause of death for Mr. Braxton were unable to be determined. Mr. Braxton was in-custody at TTCF and suffered from a previous history of schizophrenia, depression, and bipolar disorder.

i. In 2020, Dan John Santiago, a 35-year-old male, was found dead in his jail cell due to multiple traumatic injuries and coronary artery disease after a physical altercation with another inmate occurred. Mr. Santiago was held in a chokehold and also sustained various injuries which led to his death, including: multiple abrasions on the head and torso, a left upper lip laceration, swollen eyelids with a broken blood vessel, and bleeding near the scalp.

j. In 2020, Luis Casillas, was found unresponsive in his cell. Mr. Casillas was only 20 years old at the time of his death. While in custody, Mr. Casillas had been placed in the suicide/mental ward. Mr. Casillas had previously been shot in the head six years ago, where he developed paranoia as a result, and had also been shot multiple times in the torso two years prior. According to the COUNTY'S Investigator Narrative, it is unknown when Mr. Casillas had last been seen alive since he appeared to be "sleeping" during the fifteen (15) minute checks.

///

k. In 2020, Raul Antonio Barreto, a 32-year-old male, was found unresponsive in his four man cell after being assaulted. Mr. Barreto received blunt trauma to his head, neck, forearms, and elbows, and was also found with: various fractures, contusions, hemorrhages, and abrasions. Mr. Barreto had suffered from severe neck compression and the multiple blunt injuries which resulted in his death. Mr. Barreto was last seen alive at 9:30 on March 11, 2020, and deputies were not alerted as to Mr. Barreto being "down" until 12:30. When Mr. Baretto was last seen alive, subsequent checks had been performed where Mr. Baretto was seen laying on his bunk and was allegedly believed to have been sleeping.

l. In 2021, Destiny Ortega, a 32-year-old woman was found face down, in a pool of blood, in her cell. Ms. Ortega had suffered from blunt force trauma to the head from an unknown object, and sustained various internal and external injuries including: multiple lacerations, multiple abrasions, multiple hemorrhages, fractures, and multiple contusions, which led to her death. Ms. Ortega had also appeared to have past previous suicide attempts while she was in custody.

m. In 2022, Karl Wooden, a 48-year old male, was found dead after having suffered blunt head and neck trauma from being strangled by his cellmate. Mr. Wooden was in-custody at TTCF and was found with his cellmate having his knee around Mr Wooden's chest, and both hands around Mr. Wooden's neck.

n. In 2022, Marco Antonio Arreguin, a 30-year-old male, was found dead in his cell due to an unknown cause of head trauma. Mr. Arreguin received an injury on about January 08, 2022, and was pronounced dead just eight (8) days later on January 16, 2022. Previously, the following day after Mr. Arreguin had been arrested on December 30, 2021, Mr. Arreguin woke up with swollen eyes and was noted to be stumbling around and hit his head.

Mr. Arreguin's condition worsened on January 8, 2022 when he was punched in the face and neck by one of his cellmates after trying to feel around for his surroundings. After receiving a CT scan, it had been noted that Mr. Arreguin had bacteria spreading through the blood as well as inflammation of the membranes covering the brain. His condition then continued to worsen resulting in his death. Mr. Arreguin's manner of death was ultimately undetermined due to the cause and age of the head trauma being unknown.

o.  In 2022, Mario Gallegos, died after receiving a total of eleven (11) fatal stab wounds in the neck. At the time of his death, Mr. Gallegos was only 25 years old.

p.  In 2023, Erick Rubio, a 28-year old-male committed suicide while in-custody at the TTCF by inserting his body into a plastic foam mattress cover. Mr. Rubio was housed at the high observation unit and had been on suicide watch while at TTCF.

q.  In 2023, Masoud Rahmati, a 50-year-old male died after receiving blunt traumatic injuries from being struck repeatedly by three inmates while Mr. Rahmati was in the bathroom, brushing his teeth. Mr. Rahmati received various traumatic injuries which led to his death, including: contusions, abrasions, and hemorrhages to various parts of the body such as the head and torso. Mr. Rahmati was repeatedly struck around 5:30 and deputies were not informed about the injured decedent until 9:00 when he was found unresponsive and breathing.

r.   In 2023, Travis Culver Freeman, a 32-year-old male, was discovered unresponsive in his cell. Mr. Freeman was found with feces in his pants and underwear, and had a history of mental health problems including: schizoaffective disorder, bipolar disorder, and mood disorder. Mr. Freeman died due to gastrointestinal hemorrhage, bleeding from broken

1    blood vessels, which was due to his ulcers. Mr. Freeman also had various

2    blood clots present.

3    106.   As demonstrated by the forty-five (45) in-custody deaths in 2023 and the

4    twelve (12) inmates which died by due to inmate on inmate violence within the

5    COUNTY jails, it is more than evident that the policies, customs and practices

6    referenced above were widespread and longstanding within the COUNTY and LASD.

7    107.   Defendants COUNTY and LASD, through their employees and agents,

8    and through their policy-making supervisors, SHERIFF  LUNA and DOES 1 through

9    10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and

10    discipline Defendants DOES 1 through 10, and other COUNTY and LASD personnel,

11    with deliberate indifference to the constitutional rights of ANDREW BALDERRAMA,

12    and others in similar positions, as described above, and therefore, those rights thereby

13    violated.

14    108.   The unconstitutional actions and/or omissions of Defendants DOES 1

15    through 10, and other LASD custody and medical staff, as described above, were

16    approved, tolerated, and/or ratified by policymaking officers for the COUNTY and

17    LASD, including Defendants SHERIFF LUNA and DOES 1 through 10. Plaintiffs are

18    informed and believe and thereon allege that the details of this incident have been

19    revealed to the authorized policymakers within the COUNTY and LASD, and that such

20    policymakers have direct knowledge of the fact that the death of ANDREW

21    BALDERRAMA was the result of deliberate indifference to his rights to be protected

22    and safe while in the custody of the COUNTY/LASD, and his rights to have access to

23    medical care when suffering a medical emergency. Notwithstanding this knowledge,

24    the authorized policymakers within the COUNTY and LASD have approved of the

25    conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made

26    a deliberate choice to endorse such conduct and decisions, and the basis for them, that

27    resulted in the death of ANDREW BALDERRAMA By so doing, the authorized

28    policymakers within the COUNTY and LASD have shown affirmative agreement with

the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF LUNA and DOES 1 through 10, and other policy-making officers for the COUNTY and LASD were and are aware of a pattern of misconduct and injury caused by COUNTY Jails custody and medical staff similar to the conduct of Defendants described herein, but failed to discipline culpable custody and medical staff and failed to institute new procedures and policy within the COUNTY and LASD.

109.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and LASD were a moving force and/or a proximate cause of the deprivations of ANDREW BALDERRAMA's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected ANDREW BALDERRAMA to their wrongful conduct, depriving ANDREW BALDERRAMA of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of  ANDREW BALDERRAMA and others would be violated by their acts and/or omissions.

110.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and LASD, as described above, ANDREW BALDERRAMA suffered serious injuries, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and LASD.

111.   As a direct and proximate result of Defendants DOES 1-10's acts and/or omissions as set forth above, ANDREW BALDERRAMA, sustained injuries and damages.

112.   Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42

U.S.C. § 1988, and other applicable United States and California codes and laws.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability - Failure to Train

### (42 U.S.C. § 1983)

### (By Plaintiffs ESTATE OF ANDREW BALDERRAMA As Against Defendants COUNTY OF LOS ANGELES and LOS ANGELES COUNTY SHERIFF'S DEPARTMENT)

113.   Plaintiffs reallege and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

114.   "[T]he inadequacy of police training may serve as the basis for § 1983 liability inly when the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

115.   Plaintiff THE ESTATE OF ANDREW BALDERRAMA claims that the death of ANDREW BALDERRAMA was a result of the Defendants RIVERSIDE COUNTY and LASD's failure to train their employees.

116.   At all relevant times, the individual defendants, were acting in the course of his employment with the Defendants COUNTY and LASD under color of law. The actions and omissions of the individual employees, inclusive deprived ANDREW BALDERRAMA of particular rights guaranteed under the laws and Constitutions of the United States and California, as set forth in the relevant, earlier claims for relief.

117.   Defendants COUNTY'S and LASD's training of the individual defendants did not adequately instill the necessary discipline, restraint, and respect for civil rights required of enforcement personnel, especially in light of the Defendants COUNTY and LASD's decision to continue to employ the individual defendants despite their incompetence.

///

**COMPLAINT FOR DAMAGES**

118.   Indeed, on and for some time prior to May 14, 2023  (and continuing to the present date), Defendants COUNTY and LASD acting with deliberate indifference to the rights and liberties of the public in general, and of ANDREW BALDERRAMA, and of persons in his class, situation and comparable position in particular, failed to train their employees in the following regard:

a.   F To fail to properly and adequately hire, train, supervise, and monitor custodial and medical personnel at the jails;

b.   To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical crisis;

c.   To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

d.   To cover up violations of constitutional rights by any or all of the following:

i.   By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical crisis;

ii.   By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

iii.   By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

///

///

**COMPLAINT FOR DAMAGES**

e.   To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.   To allow, tolerate, and/or encourage a "code of silence" among custodial and medical personnel at the COUNTY jails whereby custodial and medical personnel does not provide adverse information against a fellow staffer;

g.   To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as ANDREW BALDERRAMA, and in the face of an obvious need for such policies, procedures, and training programs.

119.   This failure of Defendants COUNTY and LASD to provide adequate training caused the variously alleged deprivations of ANDREW BALDERRAMA's rights by the individual defendants; that is, the COUNTY and LASD's failure to train is so closely related to the deprivation of ANDREW BALDERRAMA's rights as to be the moving force that caused his ultimate injuries.

120.   Clearly, Defendants COUNTY and LASD, were deliberately indifferent to the obvious consequences of its failure to train its deputies and employees adequately.

121.   Indeed, COUNTY and LASD failed to trained its deputies and employees to such an unconstitutional degree that it resulted in a significant number of deaths based upon COUNTY and LASD lacking the necessary training. Between 2018 and 2023, the COUNTY had reflected the lack of training.

122.   In 2023, Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails resulted in forty-five (45) in-custody deaths.

123.   ANDREW BALDERRAMA's death is one (1) of four (4) confirmed inmate-on-inmate deaths within the COUNTY Jails during the 2023 calendar year and was the sixteenth (16) death that year.

124.   The Defendants' deliberate indifference towards pretrial detainees subject to inmate violence due to its failure to train its deputies and employees resulted in several inmate-on-inmate deaths since 2018. From June 2018 through June 2023, twelve (12) inmates have died by due to inmate on inmate violence within the COUNTY jails:

    a.   In 2018, Adrian Neil Vilches, a 29-year-old male, was found unresponsive in his cell and was suffering from an apparent brain injury, due to lack of oxygen, and seizures. Mr. Vilches was a well nourished male with no fatal traumatic injuries. Although the circumstances surrounding Mr. Vilches' death suggest a possible overdose that led to decreased breathing, cardiac arrest, and a deadly brain injury, it was unable to be definitively determined whether an overdose was the cause of death. Further, drug screens were performed on Mr. Vilches' in the hospital and came back negative.

    b.   In 2018, Markese Treavon Braxton, a 26-year old male, was found unresponsive and alone on the ground of his cell with vomit coming from his mouth. The diagnosis for Mr. Braxton was pulmonary edema, excessive fluids in the lungs, but both the actual manner and cause of death for Mr. Braxton were unable to be determined. Mr. Braxton was in-custody at TTCF and suffered from a previous history of schizophrenia, depression, and bipolar disorder.

    c.   In 2020, Dan John Santiago, a 35-year-old male, was found dead in his jail cell due to multiple traumatic injuries and coronary artery disease after a physical altercation with another inmate occurred. Mr. Santiago was held in a chokehold and also sustained various injuries which led to his

death, including: multiple abrasions on the head and torso, a left upper lip laceration, swollen eyelids with a broken blood vessel, and bleeding near the scalp.

d. In 2020, Luis Casillas, was found unresponsive in his cell. Mr. Casillas was only 20 years old at the time of his death. While in custody, Mr. Casillas had been placed in the suicide/mental ward. Mr. Casillas had previously been shot in the head six years ago, where he developed paranoia as a result, and had also been shot multiple times in the torso two years prior. According to the COUNTY'S Investigator Narrative, it is unknown when Mr. Casillas had last been seen alive since he appeared to be "sleeping" during the fifteen (15) minute checks.

e. In 2020, Raul Antonio Barreto, a 32-year-old male, was found unresponsive in his four man cell after being assaulted. Mr. Barreto received blunt trauma to his head, neck, forearms, and elbows, and was also found with: various fractures, contusions, hemorrhages, and abrasions. Mr. Barreto had suffered from severe neck compression and the multiple blunt injuries which resulted in his death. Mr. Barreto was last seen alive at 9:30 on March 11, 2020, and deputies were not alerted as to Mr. Barreto being "down" until 12:30. When Mr. Baretto was last seen alive, subsequent checks had been performed where Mr. Baretto was seen laying on his bunk and was allegedly believed to have been sleeping.

f. In 2021, Destiny Ortega, a 32-year-old woman was found face down, in a pool of blood, in her cell. Ms. Ortega had suffered from blunt force trauma to the head from an unknown object, and sustained various internal and external injuries including: multiple lacerations, multiple abrasions, multiple hemorrhages, fractures, and multiple contusions, which led to her death. Ms. Ortega had also appeared to have past previous suicide attempts while she was in custody.

g. In 2022, Karl Wooden, a 48-year old male, was found dead after having suffered blunt head and neck trauma from being strangled by his cellmate. Mr. Wooden was in-custody at TTCF and was found with his cellmate having his knee around Mr Wooden's chest, and both hands around Mr. Wooden's neck.

h. In 2022, Marco Antonio Arreguin, a 30-year-old male, was found dead in his cell due to an unknown cause of head trauma. Mr. Arreguin received an injury on about January 08, 2022, and was pronounced dead just eight (8) days later on January 16, 2022. Previously, the following day after Mr. Arreguin had been arrested on December 30, 2021, Mr. Arreguin woke up with swollen eyes and was noted to be stumbling around and hit his head. Mr. Arreguin's condition worsened on January 8, 2022 when he was punched in the face and neck by one of his cellmates after trying to feel around for his surroundings. After receiving a CT scan, it had been noted that Mr. Arreguin had bacteria spreading through the blood as well as inflammation of the membranes covering the brain. His condition then continued to worsen resulting in his death. Mr. Arreguin's manner of death was ultimately undetermined due to the cause and age of the head trauma being unknown.

i. In 2022, Mario Gallegos, died after receiving a total of eleven (11) fatal stab wounds in the neck. At the time of his death, Mr. Gallegos was only 25 years old.

j. In 2023, Erick Rubio, a 28-year old-male committed suicide while in-custody at the TTCF by inserting his body into a plastic foam mattress cover. Mr. Rubio was housed at the high observation unit and had been on suicide watch while at TTCF.

k. In 2023, Masoud Rahmati, a 50-year-old male died after receiving blunt traumatic injuries from being struck repeatedly by three inmates while Mr.

Rahmati was in the bathroom, brushing his teeth. Mr. Rahmati received various traumatic injuries which led to his death, including: contusions, abrasions, and hemorrhages to various parts of the body such as the head and torso. Mr. Rahmati was repeatedly struck around 5:30 and deputies were not informed about the injured decedent until 9:00 when he was found unresponsive and breathing.

l.   In 2023, Travis Culver Freeman, a 32-year-old male, was discovered unresponsive in his cell. Mr. Freeman was found with feces in his pants and underwear, and had a history of mental health problems including: schizoaffective disorder, bipolar disorder, and mood disorder. Mr. Freeman died due to gastrointestinal hemorrhage, bleeding from broken blood vessels, which was due to his ulcers. Mr. Freeman also had various blood clots present.

125.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and LASD were a moving force and/or a proximate cause of the deprivations of ANDREW BALDERRAMA's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected ANDREW BALDERRAMA to their wrongful conduct, depriving ANDREW BALDERRAMA of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of  ANDREW BALDERRAMA and others would be violated by their acts and/or omissions.

126.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and LASD, as described above, ANDREW BALDERRAMA suffered serious injuries, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY

1  and LASD.

2  127.  As a direct and proximate result of Defendants DOES 1-10's acts and/or

3  omissions as set forth above, ANDREW BALDERRAMA, sustained injuries and

4  damages.

5  128.  Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42

6  U.S.C. § 1988, and other applicable United States and California codes and laws.

7  **SIXTH CLAIM FOR RELIEF**

8  **Supervisory Liability Causing Constitutional Violations,**

9  **(42 U.S.C. § 1983)**

10  **(By Plaintiffs ESTATE OF ANDREW BALDERRAMA As Against Defendants**

11  **SHERIFF LUNA, and DOES 1 through 10)**

12  129.  Plaintiffs reallege and incorporates herein by reference each of the

13  preceding paragraphs of this complaint, and any subsequent paragraphs.

14  130.  At all material times, SHERIFF LUNA and DOES 1 through 10 had the

15  duty and responsibility to constitutionally hire, train, instruct, monitor, supervise,

16  evaluate, investigate, staff, and discipline the other Defendants employed by their

17  respective agencies in this matter, as well as all employees and agents of the COUNTY

18  and LASD.

19  131.  Defendants SHERIFF LUNA, and DOES 1 through 10 failed to properly

20  hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the

21  respective employees of their agencies, including Defendants DOES 1 through 10, and

22  other COUNTY and LASD personnel, with deliberate indifference to ANDREW

23  BALDERRAMA's and others' constitutional rights, which were thereby violated as

24  described above.

25  132.  As supervisors, Defendants SHERIFF LUNA, and DOES 1 through 10

26  each permitted and failed to prevent the unconstitutional acts of other Defendants and

27  individuals under their supervision and control, and failed to properly supervise such

28  individuals, with deliberate indifference to the rights to safety and protection while

incarcerated at MCJ and the rights to the serious medical and mental health needs of ANDREW BALDERRAMA. Supervising Defendants either directed his or her subordinates in conduct that violated Decedent's and Plaintiffs' rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive  ANDREW BALDERRAMA of rights, or knew his or her subordinates were engaging in acts likely to deprive  ANDREW BALDERRAMA of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate ANDREW BALDERRAMA's rights, and in fact did cause the violation of  ANDREW BALDERRAMA's rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable for their failures to intervene in their subordinates' apparent violations of ANDREW BALDERRAMA's rights.

133.   The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and LASD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and LASD, including Defendants SHERIFF LUNA, and DOE DEPUTIES 1 through 10, respectively, with deliberate indifference to ANDREW BALDERRAMA's and others' constitutional rights, which were thereby violated as described above.

134.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY and LASD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and LASD, including Defendants SHERIFF LUNA, and DOES1 through 10.

135.   Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF LUNA, and DOES 1 through 10 through their review of incident reports and video footage of housing units following the death of a detainee or inmate and that such Defendant-policymakers have direct

knowledge of the fact that the brutal attack by VINCENT TELLEZ  on ANDREW BALDERRAMA was not justified, necessary, and preventable because and DOES 1 through 10 were on notice of VINCENT TELLEZ  predatory behavior towards other inmates and detainees and his documented history of violence towards other inmates and detainees, and thus represents deliberate indifference to ANDREW BALDERRAMA rights to be protected and safe while in the COUNTY's custody. Notwithstanding this knowledge, on information and belief, Defendants SHERIFF LUNA and DOES 1 through 10 have approved and ratified the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the harm that ANDREW BALDERRAMA has suffered. By so doing, Defendants SHERIFF LUNA and DOES 1 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants.

136.   Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF  LUNA, and DOES 1 through 10 and other policymaking officers for the COUNTY and LASD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and LASD custody, medical and mental health staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and LASD.

137.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF  LUNA, and DOES 1 through 10 were a moving force and/or a proximate cause of the deprivations of  ANDREW BALDERRAMA's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

138.   Defendants subjected ANDREW BALDERRAMA to their wrongful conduct, depriving ANDREW BALDERRAMA of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of ANDREW BALDERRAMA and others would be violated by their acts and/or omissions.

139.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF LUNA, and DOES 1 through 10 as described above, Decedent lost his life and Plaintiffs are entitled to damages, penalties, costs, and attorneys' fees.

## SEVENTH CLAIM FOR RELIEF

### Negligence – Wrongful Death

### (Plaintiffs A.B. JR. and A.M.B. As Against All Defendants)

140.   Plaintiff realleges and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

141.   The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under Section 820 of the Government Code, as public employees, Defendants DOES 1-10, inclusive, are liable for injuries caused by their acts or omissions to the same extent as private persons. Under Section 815.2 of the Government Code, as public entities, Defendants COUNTY and LASD are liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendants COUNTY and LASD, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

142.   At all times, Defendants DOES 1 through 10 owed Plaintiffs and Decedent ANDREW BALDERRAMA the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

143.   At all times, these Defendants owed Plaintiffs and Decedent ANDREW BALDERRAMA the duty to act with reasonable care.

144. These general duties of reasonable care and due care owed to Plaintiffs and Decedent ANDREW BALDERRAMA by these Defendants include but are not limited to the following specific obligations:

a. To properly take precautions in housing and confining an inmate who is being attacked by another inmate;

b. To house and confine inmates in a housing module, cell and facility free violence;

c. To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

d. To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical and mental health crisis with serious medical and mental health needs;

e. To summon, or transport Decedent to necessary and appropriate emergency medical and mental health care

f. To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

g. To refrain from abusing their authority granted them by law; and

h. To refrain from violating Plaintiff's and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

145. Defendants DOES 1 through 10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and Decedent ANDREW BALDERRAMA .

146. Defendants COUNTY and LASD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

147. As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent ANDREW BALDERRAMA sustained injuries and damages,

1  and against each and every Defendant named in this claim for relief in their individual

2  capacities are entitled to relief, including punitive damages against such individual

3  Defendants.

4  ### EIGHTH CLAIM FOR RELIEF

5  **Negligence – Medical Malpractice**

6  **(Plaintiff ESTATE OF ANDREW BALDERRAMAAs Against All Defendants)**

7  148.   Plaintiffs reallege and incorporate herein by reference each of the

8  preceding paragraphs of this complaint, and any subsequent paragraphs.

9  149.   The present claim for relief is brought pursuant to Cal. Gov. Code §§

10  815.2 and 820. Under Section 820 of the Government Code, as public employees,

11  Defendants DOES 1-10, inclusive, are liable for injuries caused by their acts or

12  omissions to the same extent as private persons. Under Section 815.2 of the

13  Government Code, as public entities, Defendants COUNTY and LASD are liable for

14  injuries caused by the acts or omissions of their employees committed within the course

15  and scope of their employment. This cause of action is not alleging direct liability

16  against Defendants COUNTY and LASD, only vicarious liability. *See* Gov. Code, §

17  815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

18  150.   Decedent ANDREW BALDERRAMA was under the care and treatment

19  of Defendants DOES 1 through 10, all of whom were COUNTY medical staff assigned

20  to the COUNTY Jails, including KCJ, who were required to examine, treat, monitor,

21  prescribe for and care for him and to provide him with medical attention when he

22  suffered a medical emergency. These Defendants, acting within the scope and course

23  of their employment with Defendants COUNTY and LASD, negligently, carelessly

24  and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-

25  up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent

26  ANDREW BALDERRAMA to specialist medical care providers; negligently failed to

27  provide physician care; negligently failed to provide psychiatry care; carelessly failed

28  to detect, monitor, and follow-up with his condition; and negligently, carelessly and

unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee ANDREW BALDERRAMA .

151.    Defendants DOES 1 through 10, all of whom were COUNTY medical staff assigned to the COUNTY Jails failed to properly monitor ANDREW BALDERRAMA knowing that he was arrested for a minor misdemeanor and was being housed with a known violent inmate.

152. It was more than evident on about May 14, 2023, that ANDREW BALDERRAMA's situation was dire after the beating he endured and he needed immediate life-saving medical care. Instead of providing the appropriate medical care, Defendants DOES 1 through 10, and each of them, failed to take reasonable actions to summon medical care to a severely injured ANDREW BALDERRAMA.

153.    Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide Decedent ANDREW BALDERRAM emergency medical and mental health care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for Decedent ANDREW BALDERRAMA was provided.

154.    As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Decedent sustained injuries and damages that cost him his life, and Plaintiffs and Decedent are entitled to compensatory damages and as applicable to this claim for Medical Negligence, to be proven at time of trial.

155.    Defendants COUNTY and LASD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

///

///

///

## NINTH CLAIM FOR RELIEF

### Violation of California Government Code § 845.6

### (Plaintiff ESTATE OF ANDREW BALDERRAMA As Against All Defendants)

156.   Plaintiffs reallege and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

157.   Defendants DOES 1 through 10 knew ANDREW BALDERRAMA was in need of immediate medical care and treatment when following the life threatening beating he endured at the hand of his cellmate on or about May 14, 2023, and each failed to take reasonable action to summon immediate medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendants COUNTY and LASD, knowing and/or having reason to know of Decedent ANDREW BALDERRAMA's need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

158.   In fact, it was more than evident on or about May 14, 2023, that ANDREW BALDERRAMA's situation was dire and he needed immediate medical care. ANDREW BALDERRAMA needed immediate care to address his life-threatening injuries following the beaten he was subjected to after being housed with a known violent inmate. Instead of providing the appropriate medical care, Defendants DOES 1 through 10, and each of them, failed to take reasonable actions to summon medical care.

159.   Defendants COUNTY and LASD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

160.   As a direct and proximate result of the aforementioned acts of these Defendants, Decedent ANDREW BALDERRAMA lost his life as set forth above, and their losses entitle Plaintiffs to all damages allowable under California law. Decedent lost his life and Plaintiffs and Decedent are entitled to damages, penalties, costs, and

attorney fees under California law, including punitive damages against these individual Defendants.

### TENTH CLAIM FOR RELIEF

**Violation of California Civil Code § 52.1**

**(Tom Bane Act)**

**(Plaintiff ESTATE OF ANDREW BALDERRAMAAs Against All Defendants)**

161.   Plaintiff reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

162.   The present claim for relief is brought pursuant to Civil Code § 52.1, Cal. Gov. Code §§ 815.2 and 820. Under Section 820 of the Government Code, as public employees, Defendants DOES 1-10, inclusive, are liable for injuries caused by their acts or omissions to the same extent as private persons. Under Section 815.2 of the Government Code, as public entities, Defendants COUNTY and LASD are liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendants COUNTY and LASD, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

163.   Plaintiffs bring the claims in this claim for relief as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq.*

164.   By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while Decedent ANDREW BALDERRAMA was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated ANDREW BALDERRAMA's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

   a.   The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's safety, protection, and serious medical needs while in custody as a pretrial detainee as secured by the

Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

b.   The right for the familial association to be free from government interference as secured by the Fourteenth Amendment to the United States Constitution;

c.   The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

d.   The right to emergency medical and mental health care as required by California Government Code §845.6.

e.   The right to be free from bodily harm.

165.   Defendants' violations of decedent ANDREW BALDERRAMA's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[1] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of ANDREW BALDERRAMA's rights as described above, Defendants violated ANDREW BALDERRAMA's rights by the following conduct constituting threat, intimidation, or coercion:

a.   With deliberate indifference to hazards that posed a risk to pretrial detainees, such as Decedent;

b.   With deliberate indifference to the safety of pretrial detainees;

---

[1] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.,* 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

c.     With deliberate indifference to Decedent's serious medical and mental health needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical needs;

d.     Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Los Angeles County jail detainees and inmates;

e.     Requiring medical and mental health staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make; and

f.     Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

166.     The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent ANDREW BALDERRAMA's rights, or to any legitimate and lawful jail or law enforcement activity.

167.     Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

168.     Further, each Defendant violated decedent ANDREW BALDERRAMA's rights with reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

169.     Defendant COUNTY and LASD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

170.     As a direct and proximate result of Defendants' violation of California

Civil Code § 52.1 and of decedent ANDREW BALDERRAMA's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

A. Wrongful death of ANDREW BALDERRAMA, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B. Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C. ANDREW BALDERRAMA's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D. Violation of ANDREW BALDERRAMA's constitutional rights, pursuant to Cal.
Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E. ANDREW BALDERRAMA's loss of life, pursuant to federal civil rights law;

F. ANDREW BALDERRAMA's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G. General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H. Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

1

     I.     Punitive damages as to individual defendants;

2

     J.     Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 &

3

           private attorney general doctrine);

4

     K.    A multiplier of damages, including treble damages, under the Tom Bane

5

           Act;

6

     L.     Penalties under the Tom Bane Act;

7

     M.   Interest; and

8

     N.    All other damages, penalties, costs, interest, and attorneys' fees as allowed

9

           by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§

10

           377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et

11

           seq., 52.1; and as otherwise may be allowed by California and/or federal

12

           law.

13

**Dated: June 10, 2024**       **LAW OFFICES OF CHRISTIAN CONTRERAS**

14

                                    **A PROFESSIONAL LAW CORPORATION**

15

16

By: _____

                        Christian Contreras, Esq.

17

                        Edwin S. Salguero, Esq.

18

                        Attorneys for Plaintiff,
                        ESTATE OF ANDREW BALDERRAMA, et al.

19

20

**Dated: June 10, 2024**       **GASTÉLUM LAW, APC**

21

By: _____

22

                        Denisse O. Gastélum, Esq.

23

                        Attorneys for Plaintiffs,
                        ESTATE OF ANDREW BALDERRAMA, et al.

24

25

26

27

28

**COMPLAINT FOR DAMAGES**

## **DEMAND FOR JURY TRIAL**

Plaintiffs ANDREW BALDERRAMA, et al. hereby makes a demand for a jury trial in this action.

Dated: June 10, 2024

**LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Edwin S. Salguero, Esq.
Attorneys for Plaintiffs,
ESTATE OF ANDREW BALDERRAMA, et al.

Dated: June 10, 2024

**GASTÉLUM LAW, APC**

By: _____
Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs,
ESTATE OF ANDREW BALDERRAMA, et al.

**COMPLAINT FOR DAMAGES**